**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CALYPSO WIRELESS, INC., and DRAGO DAIC | § § § | |
| Plaintiffs, | § § § | |
| | § | Case No. 2:08-CV-00441 |
| v. | § § | **Jury Demanded** |
| T-MOBILE USA, INC. | § § | |
| Defendant. | § | |

**CALYPSO WIRELESS, INC.'S RESPONSE
IN OPPOSITION TO T-MOBILE'S
MOTION TO DISMISS WITH PREJUDICE**

Plaintiff, Calypso Wireless, Inc., hereby opposes T-Mobile's Second Motion to Dismiss With Prejudice. The Court should set the case for a status conference and require the parties to submit a proposed schedule in advance of the status conference. As shown below, Calypso has been working to advance the case to a resolution on the merits by resolving the ownership dispute related to the patent-in-suit. T-Mobile's motion should be denied.

**I.     LEGAL STANDARDS**

Dismissal with prejudice is an extreme measure limited to cases where "(1) there is a clear record of delay [footnote omitted] or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile." *Berry v. CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). In addition, most cases in which the Fifth Circuit has affirmed a dismissal with prejudice

were marked by at least one of the three "aggravating factors." These factors are: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Id.* Applying these standards to the facts of the present case, T-Mobile's Second Motion to Dismiss must be denied.

## II. FACTUAL BACKGROUND

In September 2010, Calypso Wireless, Inc. and T-Mobile agreed to a stay of this case to facilitate settlement talks. Pursuant to the agreement, the parties met for a mediation in Dallas, Texas on December 7th, 2010. Before the mediation, T-Mobile expressed concern regarding whether Calypso could settle the case in view of the ownership issues. Ultimately, no settlement was reached.[1]

In view of the importance of resolving the ownership issues, Calypso focused on that issue in 2011.[2]

In early 2011, Calypso was actively preparing its case against Drago Daic. During this time, the SEC suspended trading of the Company stocks for failure to file with the SEC the Stay in the T-Mobile case, which resulted in a spike in trading. Prior to the suspension, Calypso was forced to hire the firm Buchalter Nemer of Los Angeles, California to help with the company's compliance with various SEC issues and later to deal with the SEC suspension.[3]

---

[1] Pierce Declaration, pp. 2
[2] *Id.* pp. 3
[3] *Id.* pp. 4

2

CALYPSO WIRELESS, INC.'S RESPONSE IN OPPOSITION
TO T-MOBILE'S MOTION TO DISMISS WITH PREJUDICE

The State case was set to go to trial on August 22, 2011. Settlement discussions began in earnest in early June, 2011. The first meeting took place in Dallas, Texas and resulted in a mutual commitment from both sides to find a resolution.[4]

A second meeting took place in Los Angeles, California between Mr. Drago Daic and Calypso management and progress was made towards a settlement.[5]

The parties agreed to have a mediation to attempt to conclude an agreement. The mediation took place in Houston, Texas in mid July, 2011. After the mediation, the mediator Alice Oliver-Parrott submitted a mediator's proposal to both sides.[6]

Ultimately, a settlement was reached in which, *inter alia*, Daic and Williamson surrendered their ownership interest in the '923 patent.[7]

The company held a Board meeting immediately thereafter and voted to approve the Settlement.[8]

The Settlement Agreement was signed by all parties in late 2011.[9]

During this time, the company held a Shareholder forum on September 15, 2011 and later a Special Shareholder Meeting on December 15, 2011. At both meetings the management communicated to its shareholders the intention to finalize the Settlement in the State Case before turning Calypso's attention back to the T-Mobile case. A Calypso Wireless, Inc. Director then filed a lawsuit in Delaware and the court issued a Status Quo order halting any decisions by management until the case was resolved. The case went to trial on February 3, 2011 and the judge issued his opinion on February 8, 2011 appointing

---

[4] *Id.* pp. 5
[5] *Id.* pp. 6
[6] *Id.* pp. 7
[7] *Id.* pp. 8
[8] *Id.* pp. 9
[9] *Id.* pp. 10

CALYPSO WIRELESS, INC.'S RESPONSE IN OPPOSITION
TO T-MOBILE'S MOTION TO DISMISS WITH PREJUDICE

a receiver for the Company. Management started to work with the Receiver to handle all matters related to the company a week after the opinion was filed.[10]

## II. ARGUMENTS

Calypso has not "contumaciously violated court orders," nor has Calypso unduly delayed proceeding with this case. As the Court is aware and the docket reflects, there has been an on-going dispute between plaintiff Calypso and plaintiff Drago Daic regarding ownership of the patent-in-suit, U.S. Patent No. 6,680,923 ("the '923 patent"). Indeed, the joint motion to stay filed by Calypso and T-Mobile recognized the issue and relied on that issue to stay the case while settlement discussions between T-Mobile and Calypso were held.[11] The ownership dispute has been a focus of Calypso's recent activities, which have occurred exclusively in state court.[12] This issue has recently been resolved.[13] While the ownership issue could have been dealt with through this case, such an approach would have unnecessarily involved T-Mobile. Indeed, T-Mobile previously complained to the Court that it was forced to review and read all documents filed with the Court including those involving the dispute between Calypso and Daic. Calypso (and Daic) elected to resolve the ownership dispute in a forum which would not waste T-Mobile's time and resources. Calypso should not be punished for focusing on and resolving its dispute with Daic. Now that that Calypso and Daic have entered into a settlement agreement, a meaningful scheduling order can be entered and such action is requested.

---

[10] *Id.* pp. 11
[11] See Emergency Joint Unopposed Motion to Stay the Case for 90 Days (Dkt. No. 170).
[12] See Pierce Declaration, *supra*
[13] *Id.*

### A. Calypso's Conduct Has Not Resulted in Delay Which Would Require Dismissal for Failure to Prosecute

#### 1. Calypso's Efforts to Resolve Ownership Dispute Do Not Create a Clear Record of Delay

T-Mobile's suggestion that Calypso has done "absolutely nothing"[14] in furtherance of this case is a mischaracterization of the facts. Throughout this case, Calypso has been embroiled in a legal battle which involved the issue of ownership of the patent-in-suit. The ownership issue has raged for three years and a multitude of meetings, mediations, and court proceedings. Rather than bog down T-Mobile with discovery, interrogatories, and procedural issues prior to the final resolution of the identity of the parties with an ownership interest, Calypso chose instead to resolve the issue of ownership before moving on to the merits of the present case. This reasoning was recognized by T-Mobile in the Emergency Joint Motion to Stay the Case for 90 Days that was jointly filed with the Court.[15] Furthermore, in an effort to avoid wasting T-Mobile's time and resources, Calypso decided to settle the ownership dispute in separate state court proceedings. Calypso and Daic have agreed to a settlement which received final approval only recently.[16] Now, T-Mobile seeks to dismiss the lawsuit on the eve of litigation on the merits of the claims.

In September 2010, an agreed 90-day stay of the case effectively vacated the scheduling order because critical dates related to claim construction went past during the stay. These critical dates were never reset by a revised Docket Control Order. T-Mobile

---

[14] Defendant T-Mobile USA, Inc.'s Second Motion to Dismiss for Failure to Prosecute (Dkt. No. 177), at 1.

[15] See Emergency Joint Unopposed Motion to Stay the Case for 90 Days (Dkt. No. 170).

[16] The parties executed the comprehensive Settlement Agreement in late November 2011. *See* Pierce Declaration, *supra*.

accuses Calypso of failing to take depositions or issue written discovery on schedule when the schedule had *de facto* been vacated by the agreed stay. In particular, the Markman briefing and Markman hearing were all scheduled to occur during the agreed stay.[17] Without a Markman ruling even pending it is effectively impossible to conclude discovery or put the case on for trial. The truth is that neither party actively sought to reschedule and procure a new scheduling order after the stay lapsed in December 2010. T-Mobile, knowing how important the resolution of the ownership dispute was to the case, sat back and waited while Calypso fought for its rights in state court. Now T-Mobile claims that it was spending precious time and resources on a case that was effectively on hiatus when in fact T-Mobile was merely biding its time while Calypso dealt with the ownership issues in state court.

In addition to resolving the ownership dispute in state court, Calypso has been involved in a dispute between its directors in Delaware Chancery Court. Ultimately, that litigation resulted in the appointment of a receiver to manage Calypso and maximize the value to Calypso shareholders.[18]

### 2. T-Mobile Has Not Shown that No Lesser Sanction Would Satisfy

In its motion, T-Mobile attempted to argue around the fact that it has not proven the second factor required by the Fifth Circuit precedent: that "lesser sanctions would not serve the best interests of justice." *See Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417-18 (5th Cir. 2006). There has been no discussion of lesser sanctions and their applicability to the case at bar. Calypso has not been sanctioned since it first filed suit in 2008. All extensions and stays granted in this case thus far have been agreed upon by the

---

[17] See Docket Control Order (Dkt. No. 132).
[18] Pierce Declaration, *supra*.

CALYPSO WIRELESS, INC.'S RESPONSE IN OPPOSITION
TO T-MOBILE'S MOTION TO DISMISS WITH PREJUDICE

6

parties and approved by the court, and for good reason: because they were necessary to the resolution of this case. The issue of ownership has been resolved and is no longer an issue. Calypso can now move forward on the merits of its suit. In this new context, the interests of justice would be best served if the court reset the schedule and held Calypso to it.

### B. T-Mobile Has Not Shown the Applicability of Any Aggravating Factor

#### 1. Calypso Has Not Delayed or Abandoned this Case

As described above, Calypso has never halted its efforts to resolve this case. In a very real way, giving up on this case would effectively be giving up on the company entirely. On the contrary, Calypso has a strong interest in continuing prosecution and resolving the case on its merits. What T-Mobile takes for silence and inactivity has actually been Calypso fighting its legal battle on another front. The ownership dispute was first pointed out by T-Mobile early on, and its importance has been recognized throughout the record by the Court and all parties. In addition, numerous internal management issues have stretched Calypso's already limited resources even thinner. Calypso has acted reasonably to resolve the ownership issue so that this case can move forward on the merits without an additional side issue complicating the case.

#### 2. T-Mobile Is Not Prejudiced by Continuing Prosecution

T-Mobile attempts to argue that it would be unduly prejudiced if this case is not dismissed. Its argument relies almost completely on the fact that five people who were employees at the time the suit was filed have since left the company.[19] According to T-

---

[19] *See* Declaration of Anne Champion in Support of Defendant T-Mobile USA, Inc.'s Second Motion to Dismiss for Failure to Prosecute (Dkt. No. 177-1), pp. 5.

Mobile's logic, a defendant could avoid suit if any employee who knew information relating to the patent-in-suit leaves the company during the pendency of the litigation. T-Mobile makes no attempt to show that the five former employees left on hostile terms or are otherwise unavailable to provide testimony. Likewise, T-Mobile does not claim that the former employees had critical knowledge or unique evidence which would make them irreplaceable at trial. Unfortunately for T-Mobile, the '923 patent does not relate to the recipe for Dr. Pepper® or some other secret that is known only to a few people in the world. The simple fact that five employees with knowledge of relevant facts have left is not sufficient to show prejudice. Additionally, in 2009, T-Mobile raised the specter of prejudice with regards to its former employees without success.[20]

The delay caused by Calypso's ownership dispute is distinguishable from the type of delay that warranted dismissal in the cases cited by T-Mobile. In *Veazey*, the court affirmed dismissal after the plaintiff did not serve process on the defendant until 21 months after the suit was filed. *Veazey v. Young's Yacht Sale & Serv., Inc.*, 644 F.2d 475, 477 (5th Cir. 1981). In *Sealed Appellant*, the court affirmed dismissal because the plaintiff did not serve process on the defendant or file a single motion with the court for two years after the case was unsealed. *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir. 2006). In both *Veazey* and *Sealed Appellant*, the court found that the defendants had been caught off guard due to the extreme delay in their receipt of process and had therefore been actually prejudiced. In *Brewer*, a similar case, the court affirmed dismissal because the plaintiff had last acted to pursue prosecution had been had been

---

[20] *See* Defendant T-Mobile USA, Inc.'s Motion to Transfer Venue to the Western District of Washington (Dkt. No. 17).

five and a half years earlier. *Brewer v. Mercedes Benz Credit Corp.*, 2011 WL 1750229 (S.D. Miss. May 6, 2011). In the case at bar, T-Mobile was served with process soon after Calypso filed its claims. Since then, both Calypso and T-Mobile have been actively involved in prosecuting the suit, although admittedly prosecution has been hampered until recently by the ownership dispute. Even so, T-Mobile has not experienced the type of prejudice that the Fifth Circuit was referring to in *Veazey* and *Sealed Appellant*.

### 3. Any Delay Was Not Caused by Intentional Conduct

As the plaintiff, Calypso has nothing to gain from delay in this case. As described above, logic dictates that Calypso has every interest in moving forward with the litigation, and Calypso has never demonstrated any intention to the contrary. The simple truth, recognized by the court as well as T-Mobile, is that ownership of the '923 patent had to be settled before Calypso could continue. While resolution of the ownership dispute may have *literally* caused a delay, it was not an *intentional delay* in the sense implied by the Fifth Circuit. *Berry*, 975 F.2d at 1191. The *Berry* court was clearly referring to a party that was stalling for time. *See id.* If Calypso had been intentionally stalling, such stalling would be evinced by a lack of effort in the ownership dispute. However, Calypso has been diligently working on the ownership issue for the entire pendency of the case and only months ago reached a final resolution in what turned out to be a long and complicated struggle. The fact that T-Mobile was not made a party to this secondary issue should be a matter of professional courtesy, not contention.

### C. Adverse Effect of Statute of Limitations on Calypso's Claims

In addition to the requisite test set forth above, the *Berry* court further found that a dismissal without prejudice when the statute of limitations has run is reviewed under the

same standard as a dismissal with prejudice. *Id.* This point is particularly relevant to the case at bar because T-Mobile's infringing activity potentially dates back at least to January 2004, when the patent-in-suit issued. Even if this case is dismissed without prejudice, it would effectively be the same as dismissal with prejudice with regards to years of infringing activity. Furthermore, T-Mobile has indicated that the program accused of infringement has been discontinued. Accordingly, a dismissal with prejudice may well end the case completely, depending on the date when the service was discontinued.

### III. CONCLUSION

As the original, continual, and presently sole owner, Calypso has the right to enforce its '923 patent. Although ownership of the patent-in-suit has been in contention since 2008, both the Court and the parties deemed it as an issue of enough significance to warrant multiple extensions and stays. Now that the dispute has reached a final resolution and Calypso is prepared to proceed, T-Mobile asks the Court to disregard its prior rationale and dismiss the case with prejudice. Calypso merely asks for the chance to proceed with the case on its merits. The Court should set a new scheduling order and hold Calypso to it. T-Mobile's motion should be denied.

Dated:  March 7, 2012  Respectfully submitted,

   /s/ Paul V. Storm
Paul V. Storm (lead counsel)
State Bar No.  19325350
Storm, LLC
4105 S. Bowen Rd,
Arlington, TX 76016
(214) 347-4701
Email:  paulstorm@stormllp.com

ATTORNEY FOR PLAINTIFF CALYPSO WIRELESS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 7 day of March, 2012. Any other counsel of record will be served by first class mail on this same date.

                                                          /s/ Paul V. Storm
                                                Paul V. Storm