# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

CALYPSO WIRELESS, INC., DRAGO DAIC, &
JIMMY WILLIAMSON, P.C.,

      Plaintiffs-Counterclaim Defendants,

v.

T-MOBILE USA, INC.,

      Defendant-Counterclaim Plaintiff.

Case No. 2:08-CV-441-JRG-RSP

Jury Trial Demanded

## T-MOBILE USA, INC.'S ANSWER AND COUNTERCLAIMS TO DRAGO DAIC'S SECOND AMENDED COMPLAINT AND JIMMY WILLIAMSON P.C.'s AMENDED CROSS-CLAIM

Defendant T-Mobile USA, Inc. ("T-Mobile"), by its attorneys, answers the Second Amended Complaint ("Second Amended Complaint") of Drago Daic ("Daic") and the Amended Cross-Claim ("Amended Cross-Claim") of Jimmy Williamson, P.C. ("Williamson"), as follows.

T-Mobile further states that anything in Drago Daic's Second Amended Complaint and anything in Jimmy Williamson, P.C.'s Amended Cross-Claim that is not expressly admitted is hereby denied.

## I.      PARTIES

1.      T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

2.      T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

3.      T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

4.      T-Mobile admits the allegations in Paragraph 4 of the Second Amended Complaint and Amended Cross-Claim except denies that it is a Washington Corporation.  T-Mobile is a Delaware Corporation with its principal place of business located at 12920 S.E. 38th Street, Bellevue, Washington 98006-1350.

## II.      JURISDICTION AND VENUE

5.      T-Mobile denies that this Court has jurisdiction over this claim for patent infringement pursuant to 35 U.S.C. § 1, et seq., on the basis that Daic and Williamson lack standing to assert this claim.  Daic and Williamson have alleged only that they are "owners of certain ownership rights in the '923 Patent."  (Second Amended Complaint and Amended Cross-Claim at ¶ 9).  On information and belief, Daic and Williamson lack sufficient ownership rights to be patentees within the meaning of 35 U.S.C. § 281, and therefore do not have standing to sue for infringement.  To the extent that all of the ownership interests in the patent-in-suit reside with Daic and/or Williamson, T-Mobile admits that jurisdiction is proper pursuant to 28 U.S.C. § 1338, but otherwise denies the allegations in Paragraph 5 of the Second Amended Complaint and Amended Cross-Claim, and specifically denies that Daic and/or Williamson have stated a legally sufficient claim for patent infringement.

6.      For the purposes of this action, T-Mobile consents to personal jurisdiction but denies the allegations in Paragraph 6 of the Second Amended Complaint and Amended Cross-Claim.

7.     T-Mobile admits that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c), but denies that there is not a venue that is clearly more convenient.  T-Mobile denies the remaining allegations in Paragraph 7 of the Second Amended Complaint and Amended Cross-Claim.

### III.     GENERAL ALLEGATIONS

8.     T-Mobile admits U.S. Patent No. 6,680,923 ("the '923 patent") is entitled "Communication System and Method," and bears an issue date of January 20, 2004.  T-Mobile otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

9.     T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

10.     T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

11.     Denied.

### IV.     CLAIM FOR PATENT INFRINGEMENT

12.     No response is required to Daic's and Williamson's incorporation by reference of the foregoing paragraphs of its Second Amended Complaint and Amended Cross-Claim.  To the extent that a response is deemed required, T-Mobile restates the above responses to Paragraphs 1-11 of this Answer and incorporates such responses by reference herein.

13.     T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Second Amended Complaint and Amended Cross-Claim, and therefore denies these allegations.

14.     Denied.

15.     Denied.

16.     Denied.

## V.     JURY DEMAND

17.     A response is not required to Daic's and Williamson's demand for a jury trial in Paragraph 17 of the Second Amended Complaint and Amended Cross-Claim.  To the extent that a response is deemed required, T-Mobile requests a jury trial for all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

18.     A response is not required to Daic's and Williamson's prayer for relief in Paragraph 18 of the Second Amended Complaint.  To the extent that a response is deemed required, T-Mobile denies that Daic and Williamson is entitled to be awarded any relief whatsoever from T-Mobile.  T-Mobile has not infringed, directly or indirectly, any valid and enforceable claim of the '923 patent, and Daic and Williamson is not entitled to any remedy or recovery relating to its claim for patent infringement.  Daic's and Williamson's prayer should therefore be denied and with prejudice, and Daic and Williamson should take nothing therefor.

## AFFIRMATIVE DEFENSES

19.     Further answering the Second Amended Complaint and Amended Cross-Claim and as additional answers thereto, T-Mobile asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

20.     T-Mobile has not infringed and does not infringe any valid and enforceable claim of the '923 patent directly or indirectly, literally or by the doctrine of equivalents.  T-Mobile does not infringe any of the asserted claims at least because none of the accused services switch between wireless networks depending on "predetermined parameters" including a "pre-established vicinity range," as required by one or more of the asserted claims.

## SECOND AFFIRMATIVE DEFENSE
### (Invalidity)

21.     One or more claims of the '923 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, all of the asserted claims of the patent-in-suit are invalid pursuant to 35 U.S.C. §§ 102 and 103 at least in view of one or more of the prior art references discussed in paragraphs 22-49 of T-Mobile's Third Affirmative Defense for inequitable conduct.

## THIRD AFFIRMATIVE DEFENSE
### (Inequitable Conduct in Prosecuting the '923 Application)

22.     Daic's and Williamson's allegation of infringement of the '923 patent is barred because the '923 patent is unenforceable due to inequitable conduct in its procurement, including, but not limited to, failure to disclose to the United States Patent and Trademark Office ("PTO") material prior art and information of which Calypso Wireless, Inc. ("Calypso"), the patent agent or attorneys, named inventor and/or other individuals substantively involved in the preparation and prosecution of Calypso's patent applications including at least Peter Matos, Esq. (collectively, "Applicants"), were aware.  On information and belief, Applicants failed to disclose material prior art and information to the PTO of which they were aware with an intent to deceive the PTO during prosecution of Application No. 09/577,812, the application that led to the '923 patent ("the '923 application").

23.    Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual of

Patent Examination Procedure ("MPEP") § 2000.01, *et seq.*, impose a duty of candor and good

faith on each individual associated with the filing and prosecution of a patent application before

the PTO, which requires he or she to disclose to the PTO all information that is material to the

patentability of the application under examination.  Breach of this duty of candor, good faith, and

honesty with intent to deceive the PTO constitutes inequitable conduct so as to render the '923

patent unenforceable.

24.    On information and belief, the '923 application was filed on May 23, 2000, and

issued as the '923 patent on January 20, 2004.  On information and belief, Peter Matos, Esq., of

the law firm of Malloy & Malloy, P.A., was the prosecuting attorney for the '923 application.

The primary examiner was Examiner Kwang Bin Yao.

25.    On information and belief, on March 9, 2001, Applicants filed a co-pending

Patent Cooperation Treaty ("PCT") application, application number PCT/US01/07528 ("the PCT

application").  Mr. Matos of Malloy & Malloy, P.A. was also listed as the agent for the PCT

application.  Applicants' PCT application was examined by a different examiner than the '923

application.

26.    On information and belief, Applicants' PCT application was published as WO

01/90853 A2 on or about November 29, 2001.

27.    On its face, the PCT application claims priority to the '923 application.

28.    On information and belief, during prosecution of the '923 application and the

PCT application, the claims of the PCT application and the '923 application were identical,

nearly identical, or substantially similar.  The claims Applicants initially sought during

prosecution of the '923 application were identical or nearly identical to the claims sought in the

6

PCT application.  The claims of the '923 application remained unchanged from the original

application until an amendment was filed on September 15, 2003.  The claims as amended

remained substantially similar or identical to the claims in the PCT application and the original

'923 application.

### Failure to Disclose the International Search Report and Material Prior Art from the International Search Report

29.     An International Search Report ("the ISR") was performed in connection with

Applicants' PCT application.  On information and belief, the ISR was mailed to Applicants on

July 3, 2001, and on information and belief, Applicants, including at least Peter Matos, Esq.,

received it.  The ISR was published on April 11, 2002 as WO 01/90853 A3.

30.     The ISR lists ten references:  U.S. Patent No. 4,456,793 ("the '793 patent"); U.S.

Patent No. 4,910,794 ("the '794 patent"); U.S. Patent No. 5,070,536 ("the '536 patent"); U.S.

Patent No. 5,483,676 ("the '676 patent"); U.S. Patent No. 5,657,345 ("the '345 patent"); U.S.

Patent No. 5,819,184 ("the 184 patent"); U.S. Patent No. 5,943,692 ("the '692 patent"); U.S.

Patent No. 5,974,312 ("the '312 patent"); U.S. Patent No. 6,167,258 ("the '258 patent"), and

U.S. Patent No. 6,202,060 ("the '060 patent").

31.     The ISR categorizes the references according to their relevance to the claims in

the application.  Among the categories are "X" and "Y."  A reference categorized with an "X" is

a reference that has been identified as a "document of particular relevance; the claimed invention

cannot be considered novel or cannot be considered to involve an inventive step when the

document is taken alone."  A reference categorized with a "Y" is a reference that has been

identified as a "document of particular relevance; the claimed invention cannot be considered to

involve an inventive step when the document is combined with one or more other such

documents, such combination being obvious to a person skilled in the art."  Among the ten

references identified in the ISR, eight were identified as either X or Y references, or both, and of those eight, seven had priority dates before the priority date claimed in the PCT application:  the '793 patent, the '794 patent, the '536 patent, the '676 patent, the '345 patent, the '184 patent, and the '692 patent (collectively, "the ISR prior art references").

32.     The examiner identified the '793 patent, and specifically Figures 1-6 and col. 2:28 – col. 4:2, as a "document of particular relevance" to claims 1-8 and 10 of the PCT application, such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."  Claims 1-8 and 10 of the PCT application are identical to claims 1-8 and 10 of the claims originally sought in the application that led to the '923 patent, and claims 1, 2, 6, 7, and 8 of the PCT application are nearly identical to the claims that ultimately issued as claims 1, 2, 3, 4, and 5 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

33.     The examiner also identified the '793 patent, and specifically Figures 1-6 and col. 2:28 – col. 4:2, as a "document of particular relevance" to claims 9 and 11-39 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."  Claims 9 and 11-39 of the PCT application are identical to claims 9 and 11-39 of the claims originally sought in the application that led to the '923 patent.  Claims 27-29 and 30-39 of the PCT application are identical to the claims that ultimately issued as claims 28-30 and 6-15 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

Further, claims 14-20 and 23-24 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 and 25-26 of the '923 patent, respectively.

34.    The examiner identified the '794 patent, and specifically Figures 1-6 and col. 2:10 – col. 3:16, as a "document of particular relevance" to claims 1-8 and 10 of the PCT application, such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."  Claims 1-8 and 10 of the PCT application are identical to claims 1-8 and 10 of the claims originally sought in the application that led to the '923 patent, and claims 1, 2, 6, 7, and 8 of the PCT application are nearly identical to the claims that ultimately issued as claims 1, 2, 3, 4, and 5 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

35.    The examiner also identified the '794 patent, and specifically Figures 1-6 and col. 2:10 – col. 3:16, as a "document of particular relevance" to claims 9 and 11-35 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."  Claims 9 and 11-35 of the PCT application are identical to claims 9 and 11-35 of the claims originally sought in the application that led to the '923 patent.  Claims 27-29 and 30-35 of the PCT application are identical to the claims that ultimately issued as claims 28-30 and 6-11 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued. Further, claims 14-20 and 23-24 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 and 25-26 of the '923 patent, respectively.

36.     The examiner identified the '536 patent, and specifically Figures 1-6 and col. 2: 29-35, as a "document of particular relevance" to claims 1-8 and 10 of the PCT application, such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."  Claims 1-8 and 10 of the PCT application are identical to claims 1-8 and 10 of the claims originally sought in the application that led to the '923 patent, and claims 1, 2, 6, 7, and 8 of the PCT application are nearly identical to the claims that ultimately issued as claims 1, 2, 3, 4, and 5 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

37.     The examiner also identified the '536 patent, and specifically Figures 1-6 and col. 2: 29-35, as a "document of particular relevance" to claims 9 and 11-39 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."  Claims 9 and 11-39 of the PCT application are identical to claims 9 and 11-39 of the claims originally sought in the application that led to the '923 patent.  Claims 27-29 and 30-39 of the PCT application are identical to the claims that ultimately issued as claims 28-30 and 6-15 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.  Further, claims 14-20 and 23-24 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 and 25-26 of the '923 patent, respectively.

38.     The examiner identified the '676 patent, and specifically Figures 1-6 and col. 2:35 – col. 3:35, as a "document of particular relevance" to claims 1-8 and 10 of the PCT application, such that "the claimed invention cannot be considered novel or cannot be considered to involve

an inventive step when the document is taken alone." Claims 1-8 and 10 of the PCT application are identical to claims 1-8 and 10 of the claims originally sought in the application that led to the '923 patent, and claims 1, 2, 6, 7, and 8 of the PCT application are nearly identical to the claims that ultimately issued as claims 1, 2, 3, 4, and 5 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

39.      The examiner also identified the '676 patent, and specifically Figures 1-6 and col. 2:35 – col. 3:35, as a "document of particular relevance" to claims 9 and 11-39 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art." Claims 9 and 11-39 of the PCT application are identical to claims 9 and 11-39 of the claims originally sought in the application that led to the '923 patent. Claims 27-29 and 30-39 of the PCT application are identical to the claims that ultimately issued as claims 28-30 and 6-15 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued. Further, claims 14-20 and 23-24 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 and 25-26 of the '923 patent, respectively.

40.      The examiner identified the '345 patent, and specifically Figures 1-2 and col. 2:55 – col. 4:6, as a "document of particular relevance" to claims 1-8 and 10 of the PCT application, such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone." Claims 1-8 and 10 of the PCT application are identical to claims 1-8 and 10 of the claims originally sought in the application that led to the '923 patent, and claims 1, 2, 6, 7, and 8 of the PCT application are nearly identical to the claims

that ultimately issued as claims 1, 2, 3, 4, and 5 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

41.     The examiner also identified the '345 patent, and specifically Figures 1-2 and col. 2:55 – col. 4:6, as a "document of particular relevance" to claims 9 and 11-39 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."  Claims 9 and 11-39 of the PCT application are identical to claims 9 and 11-39 of the claims originally sought in the application that led to the '923 patent.  Claims 27-29 and 30-39 of the PCT application are identical to the claims that ultimately issued as claims 28-30 and 6-15 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.  Further, claims 14-20 and 23-24 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 and 25-26 of the '923 patent, respectively.

42.     The examiner identified the '184 patent, and specifically Figures 1-3 and col. 6:41 – col. 8:62, as a "document of particular relevance" to claims 1-10 of the PCT application, such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."  Claims 1-10 of the PCT application are identical to claims 1-10 of the claims originally sought in the application that led to the '923 patent, and claims 1, 2, 6, 7, and 8 of the PCT application are nearly identical to the claims that ultimately issued as claims 1, 2, 3, 4, and 5 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.

43.     The examiner also identified the '184 patent, and specifically Figures 1-3 and col. 6:41 – col. 8:62, as a "document of particular relevance" to claims 11-39 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."  Claims 11-39 of the PCT application are identical to claims 11-39 of the claims originally sought in the application that led to the '923 patent.  Claims 27-29 and 30-39 of the PCT application are identical to the claims that ultimately issued as claims 28-30 and 6-15 of the '923 patent, respectively, which correspond to the claims after they were amended in September 2003, after the search report was issued.  Further, claims 14-20 and 23-24 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 and 25-26 of the '923 patent, respectively.

44.     The examiner identified the '692 patent, and specifically Figures 1-5 and col. 2: 54-58, as a "document of particular relevance" to claims 11-20 of the PCT application, such that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."  Claims 11-20 of the PCT application are identical to claims 11-20 of the claims originally sought in the application that led to the '923 patent.  Claims 14-20 of the PCT application are nearly identical to the claims that ultimately issued as claims 17-23 of the '923 patent, which correspond to the claims after they were amended in September 2003, after the search report was issued.

45.     Therefore, on information and belief, Applicants knew or should have known that the ISR and ISR prior art references were material to the patentability of the claims prosecuted in the '923 application.  On information and belief, Applicants never disclosed the ISR or the ISR

prior art references to the PTO during prosecution of the '923 application.  On information and belief, failure to disclose the ISR and the ISR prior art references to the PTO during prosecution of the '923 application was done with an intent to deceive the PTO and constituted a breach of the duty of candor owed to the PTO.

### Failure to Disclose the International Preliminary Examination Report and Material Prior Art from the International Preliminary Examination Report

46.     An International Preliminary Examination Report ("IPER") was also issued in connection with the PCT application on January 23, 2003.  On information and belief, the IPER was transmitted to Applicants and Applicants received it.

47.     In the IPER, the PCT examiner stated:  "Claims 1-8 and 10 lack novelty under PCT Article 33(2) as being anticipated by Baker, et al."; "Claim 9 lacks an inventive step under PCT Article 33(3) as being obvious over Baker, et al."; and "Claims 11-39 lack an inventive step under PCT Article 33(3) as being obvious over Baker, et al in view of Marberg, et al." (Baker et al. and Marberg et al. shall be collectively referred to as "the IPER prior art references").

48.     On information and belief, the "Baker" reference referred to in the IPER corresponds to the '793 patent disclosed in the ISR, whose first named inventor is "Baker," while the "Marberg" reference referred to in the IPER corresponds to the '692 patent disclosed in the ISR, whose first named inventor is "Marberg."

49.     On information and belief, Applicants knew or should have known that the IPER and IPER prior art references were material to the patentability of the claims prosecuted in the '923 application.  On information and belief, Applicants never disclosed the IPER or IPER prior art references to the PTO during prosecution of the '923 patent.  On information and belief, failure to disclose the IPER and IPER prior art references to the PTO during prosecution of the

'923 application was done with an intent to deceive the PTO and constituted a breach of the duty

of candor owed to the PTO.

## FOURTH AFFIRMATIVE DEFENSE
### (Laches, Equitable Estoppel, Consent and Waiver)

50.    Daic's and Williamson's claims are barred in whole or in part by the doctrine of

laches, the doctrine of equitable estoppel, Daic's and Williamson's consent, and waiver at least

because Calypso, the owner of the patent, and a company of which Daic and Williamson have

alleged to be creditors, and T-Mobile's predecessor, Voicestream Wireless Corporation, engaged

in prior interactions, including entering into a non-disclosure agreement on January 15, 2002, for

the purposes of "discuss[ing] certain business transactions and to exchange information for the

purpose of exploring a potential business relationship for the benefit of the Parties." (D.I. 19-

11). This agreement did not result in T-Mobile licensing the patent-in-suit or in any other

business relationship between the parties. Calypso did not file this suit until November 13, 2008,

more than six years after the non-disclosure agreement was signed.

## FIFTH AFFIRMATIVE DEFENSE
### (License and Patent Exhaustion)

51.    Daic's and Williamson's claims are barred in whole or in part by express or

implied license and/or the doctrine of patent exhaustion at least for the reasons stated in

paragraph 50 of T-Mobile's Fourth Affirmative Defense.

## SIXTH AFFIRMATIVE DEFENSE
### (Notice – 35 U.S.C. § 287)

52.    To the extent Daic and Williamson seeks damages for any alleged infringement

prior to its giving actual notice of the '923 patent to T-Mobile, its claims are barred pursuant to

35 U.S.C. § 287(a).

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

53.     Daic and Williamson lack standing to assert this claim.  Daic and Williamson

have alleged only that they are "owners of certain ownership rights in the '923 Patent."  (Second

Amended Complaint and Amended Cross-Claim at ¶ 9).  On information and belief, Daic and

Williamson lack sufficient ownership rights to be patentees within the meaning of 35 U.S.C.

§ 281, and therefore do not have standing to sue for infringement.  To the extent Daic and

Williamson do not own all rights to the '923 patent, Daic's Second Amended Complaint and

Williamson's Amended Cross-Claim must be dismissed pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure for lack of standing.

## EIGHTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

54.     Daic and Williamson fails to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

For its Counterclaims in the above-captioned action, T-Mobile USA, Inc. ("T-Mobile")

hereby alleges as follows:

## THE PARTIES

1.     T-Mobile is a Delaware corporation whose principal place of business is located

at 12920 S.E. 38th Street, Bellevue, WA 98006-1350.

2.     On information and belief, Calypso Wireless, Inc. ("Calypso") is a Delaware

corporation with its principal place of business located at 5100 Westheimer, Suite 200, Houston,

TX 77056.

3.     On information and belief, Drago Daic ("Daic") is an individual residing in Harris

County, Texas.

4.      On information and belief, Jimmy Williamson, P.C. ("Williamson") is a professional corporation with its principal place of business at 4310 Yoakum Blvd., Houston, Texas 77006.

## JURISDICTION AND VENUE

5.      These counterclaims arise under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

6.      Venue is proper under at least 28 U.S.C. §§ 1391 and 1400(b).

7.      Daic and Williamson has asserted that T-Mobile infringes U.S. Patent No. 6,680,923 ("the '923 patent"). An actual controversy exists between T-Mobile and Daic and Williamson over the alleged infringement and invalidity of the '923 patent.

## FIRST COUNTERCLAIM
### (Non-Infringement)

8.      T-Mobile realleges counterclaim paragraphs 1 through 5 as though fully set forth herein.

9.      T-Mobile has not infringed, and does not directly or indirectly infringe any valid, enforceable claim of the '923 patent, either literally or under the doctrine of equivalents. T-Mobile does not infringe any of the asserted claims at least because none of the accused services switch between wireless networks depending on "predetermined parameters" including a "pre-established vicinity range," as required by one or more of the asserted claims.

10.     Accordingly, T-Mobile is entitled to a declaratory judgment that it does not infringe any valid, enforceable claim of the '923 patent.

## SECOND COUNTERCLAIM
### (Invalidity)

11.     T-Mobile realleges counterclaim paragraphs 1 through 8 as though fully set forth herein.

12.     The '923 patent is invalid for failing to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.  For example, all of the asserted claims of the patent-in-suit are invalid pursuant to 35 U.S.C. §§ 102 and 103 at least in view of one or more of the prior art references discussed in paragraphs 22-49 of T-Mobile's Third Affirmative Defense for inequitable conduct.

13.     Accordingly, T-Mobile is entitled to a declaratory judgment that the '923 patent is invalid.

### THIRD COUNTERCLAIM
**(Unenforceability)**

14.     T-Mobile repeats and realleges counterclaim paragraphs 1 through 11 as though fully set forth herein.

15.     For the reasons set forth above in T-Mobile's Third Affirmative Defense (affirmative defense paragraphs 22-49), the '923 patent is unenforceable as a result of inequitable conduct in its procurement, including, but not limited to, failure to disclose relevant material prior art and information of which Applicants were aware to the U.S. Patent and Trademark Office during prosecution of the application that led to the '923 Patent.  On information and belief, such acts were performed with intent to deceive the PTO.

### DEMAND FOR A JURY TRIAL

16.     T-Mobile demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

FOR THESE REASONS, T-Mobile respectfully requests that this Court enter judgment in its favor and grant the following relief:

      a.      An order declaring that Daic and Williamson take nothing from T-Mobile on the claims asserted in the Second Amended Complaint and Amended Cross-Claim;

      b.      A declaration that T-Mobile does not infringe any valid and enforceable claim of the '923 patent;

      c.      A declaration that the '923 patent is invalid and/or unenforceable;

      d.      Judgment against Daic and Williamson in favor of T-Mobile;

      e.      Dismissal of the Second Amended Complaint and Amended Cross-Claim with prejudice;

      f.      An order declaring that this is an exceptional case under 35 U.S.C. § 285;

      g.      An award to T-Mobile of its costs, expenses, and reasonable attorney fees order under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

      h.      Any such other relief as the Court may deem appropriate and just under the circumstances.

Dated: June 21, 2012                  Respectfully submitted,

                                  /s/    *Josh A. Krevitt*
                                  Josh A. Krevitt, Lead Attorney
                                  Benjamin Hershkowitz
                                  Anne Champion
                                  **GIBSON, DUNN & CRUTCHER LLP**
                                  200 Park Avenue
                                  New York, New York 10166
                                  Telephone: (212) 351-4000
                                  Facsimile: (212) 351-4035
                                  jkrevitt@gibsondunn.com
                                  bhershkowitz@gibsondunn.com
                                  rkoehl@gibsondunn.com

*Attorneys for Defendant-Counterclaim Plaintiff T-Mobile USA, Inc.*

Jennifer Parker Ainsworth, Tex. Bar No. 00784720
**WILSON, ROBERTSON, & CORNELIUS, P.C.**
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5092
jainsworth@wilsonlawfirm.com

*Attorneys for Defendant T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on June 21, 2012.

_____ /s/ *Josh A. Krevitt* _____