IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CALYPSO WIRELESS, INC., et al. | § | |
| | § | |
| v. | § | Case No. 2:08-CV-441-JRG-RSP |
| | § | |
| T-MOBILE USA INC. | § | |

## AMENDED MEMORANDUM ORDER

Before the Court is Defendant T-Mobile USA, Inc.'s Motion for Sanctions Pursuant to 35 U.S.C. § 285 Against Plaintiffs Calypso Wireless, Inc., Drago Daic, and Jimmy Williamson, P.C.[1] (Dkt. No. 326, filed April 2, 2013.)

On March 30, 2014, a Memorandum Order (Dkt. No. 341) issued denying Defendant T-Mobile USA Inc.'s Motion for Sanctions Pursuant to 35 U.S.C. § 285 (Dkt. No. 326). The Court, *sua sponte*, issues this Amended Memorandum Order supplementing the previous Memorandum Order (Dkt. No. 341) in consideration of two recent United States Supreme Court cases[2] affecting the standard of proof and legal standards concerning Defendant's Motion for Sanctions Pursuant to 35 U.S.C. § 285 (Dkt. No. 326).

The Court, having reviewed the Parties' briefing and the motions referenced by the Parties' briefing, and with due consideration accorded in light of the relevant Supreme Court precedent, finds for the reasons stated below, that T-Mobile's motion is DENIED.

---

[1] Calypso Wireless, Inc., Drago Daic, and Jimmy Williamson, P.C. are collectively referred to in this motion as "Plaintiff" or "Calypso."

[2] *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).

## APPLICABLE LAW

"A court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The determination whether a case is exceptional is within the discretion of the Court. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014). *See also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[T]he determination whether a case is 'exceptional' under § 285 is a matter of discretion."). If the case is shown to be exceptional, the movant must then show that an award of attorney fees is justified. An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*.

## DISCUSSION

T-Mobile's motion asks the Court to find that Calypso's conduct in this case was exceptional under 35 U.S.C. § 285 and award T-Mobile reasonable attorney's fees and costs.[3] T-Mobile's motion presents two overlapping questions to the Court:

1) Did Calypso's conduct in this case amount to litigation misconduct?

2) Did Calypso's pursuit of a theory of infringement based on a construction of the term "pre-established vicinity range" (of U.S. Patent No. 6,680,923, hereinafter "'923 patent")—that did not require switching based on actual distance—

---

[3] T-Mobile requests either its fees ($4,571,481,91) and costs ($599,646,91) from the beginning of the litigation or its fees ($1,930,526.00) and costs ($468,778.75) subsequent to the Court's issuance of its Provisional Claim Construction Order.

demonstrate either that Calypso brought (or continued to bring) an objectively baseless case or that Calypso continued its case in subjective bad faith?

The following timeline of events is relevant background to both of T-Mobile's questions: the Court held a *Markman* hearing and issued proposed claim constructions on September 10, 2012, the Court issued a Provisional Claim Construction Order (Dkt. No. 236, filed September 11, 2012), the Court issued a *Markman* order (Dkt. No. 281, filed December 3, 2012), Calypso filed a motion for reconsideration of the Court's *Markman* order (Dkt. No. 291, filed December 18, 2012), T-Mobile filed a motion for Summary Judgment of Non-Infringement of All Claims of U.S. Patent No. 6,680, 923 (Dkt. No. 289, filed December 14, 2012), the Magistrate Judge issued a Report and Recommendation recommending that T-Mobile's Summary Judgment motion be granted (Dkt. No. 309, filed January 15, 2013), the District Judge issued an order denying Calypso's motion for reconsideration of the *Markman* (Dkt. No. 312, filed January 16, 2013), the District Judge issued an order adopting the Magistrate Judge's recommendation (Dkt. No. 320, filed February 25, 2013), Calypso appealed (Dkt. No. 328, filed April 18, 2013), and the Federal Circuit affirmed the Court's ruling (Dkt. No. 338, filed February 2, 2014).

**A.      Did Calypso's conduct amount to litigation misconduct?**

T-Mobile argues that Calypso pursued the case in a vexatious manner from the outset, pointing to the fact that the case was pending for more than four years before claim construction was reached and that Calypso took sixteen months to join the necessary parties and serve infringement contentions. (Mot. at 1.) T-Mobile argues that Calypso neglected its case due to an ownership dispute over the patent-in-suit in the initial portion of the case. (Mot. at 10.) T-Mobile argues that Calypso improperly sought stays in the case.[4] (*Id.*)

---

[4] T-Mobile's Motion attempts to incorporate by reference the entire contents of two motions to dismiss: "[a]s described in T-Mobile's first motion to dismiss, which T-Mobile

Calypso replies that, while T-Mobile points to 18 months of extensions as misconduct, "examining each of these extensions and the stay makes clear that T-Mobile only opposed one of those 'delays' and stipulated, joined, or did not oppose the rest." (Resp. at 4-5, 13). Calypso also points to nine unopposed extensions sought by T-Mobile as sources of delay. (Resp. at 5, 14.)

T-Mobile argues that Calypso did not do an adequate pre-suit investigation. (Mot. at 6.) Specifically, T-Mobile argues that Calypso "did not identify a single step taken to compare the accused system with the claims of the patent-in-suit in response to T-Mobile's discovery requests." (*Id.*)

Calypso responds that T-Mobile's documents do not show "a lack of pre-suit investigation, but rather that a representative, an individual plaintiff, and a third party did not personally investigate the claims in this case without the assistance of counsel." (Resp. at 9.) Calypso argues that its pre-suit investigation was done with the involvement of counsel. (Sur-Reply at 2.)

T-Mobile argues that Calypso, apparently improperly, avoided the merits of the case by not serving written discovery on T-Mobile. (Mot. at 10.) T-Mobile also argues that Calypso was improper by not raising any issues with T-Mobile's production until six days before the close of fact discovery, and that Calypso was improper for pursuing a motion to compel additional production from T-Mobile. (*Id.* at 10-11.)

Calypso responds that T-Mobile provides no authority for the proposition that "foregoing certain discovery instruments rises to the level of 'litigation misconduct' . . . ." (Resp. at 14.)

---

incorporates by reference . . . ." and "[a]s described in T-Mobile's second motion to dismiss, which T-Mobile incorporates by reference . . . ." The Court, out of respect for its page limit requirements, declines to incorporate either T-Mobile's initial briefing or the totality of the briefing on the referenced motions into T-Mobile's instant motion as additional argument.

Calypso responds that its motion to compel was filed within the deadline set for motions to compel discovery by the Court, that its motion to compel was granted in part and denied in part, and that its objections to the Court's ruling on its motion to compel were timely filed. (*Id.* at 15.) Calypso also argues that T-Mobile served Amended Initial Disclosures on the last day of fact discovery, disclosing new witnesses. (*Id.*) Calypso argues that its motion to compel was only required because T-Mobile disregarded a scheduling order, and that Calypso's examination of "metadata accompanying T-Mobile's document production shows that its counsel was in possession of at least 5000 of these documents for at least a year prior to their production." (Sur-Reply at 9.)

T-Mobile argues that Calypso improperly refused to combine a 30(b)(6) designee's deposition with the same individual's 30(b)(1) deposition. (Mot. at 11.) T-Mobile argues that Calypso also caused "many wasted hours and resources for T-Mobile" when Calypso instructed its witnesses not to answer questions on privilege grounds, on their interest in the patent and litigation, or on specific topics.

Calypso disputes T-Mobile's version of events, stating that T-Mobile "unilaterally asserted that Calypso could no longer litigate the case . . . and refused to present any witnesses for the depositions noticed on September 20, 2012." (Resp. at 15.) Calypso states that T-Mobile "then unilaterally attempted to designate witnesses under 30(b)(6) at the eleventh hour, when those witnesses had been noticed as individual fact witnesses, insisting that Plaintiffs use the noticed deposition for both purposes." (*Id.*) Calypso argues that "hours" of wasted time cannot rise to the level of "litigation misconduct," and that T-Mobile never filed objections or sought a motion to compel on the conduct it now complains of. (*Id.* at 17.)

T-Mobile argues that Calypso's expert reports were deficient and disregarded deadlines set by the Court, increasing T-Mobile's burden and expense. (Mot. at 12-14.) T-Mobile argues that Calypso improperly served preliminary expert reports, and that Calypso did not provide "complete expert reports by the deadlines set by the court." (Reply at 9-10.) T-Mobile argues that T-Mobile would (possibly) have had to rebut multiple versions of the damages report due to the deficiencies T-Mobile alleges if the case had proceeded. (*Id.* at 10.)

Calypso responds that its experts were delayed due to protective order provisions sought by T-Mobile, that these provisions restricted the documents Calypso's experts could access, and that the Court granted Calypso an extension on its expert report filings due to the effect the protective order provisions had on its experts. (Resp. at 17.) Calypso responds that, to the extent T-Mobile believed Calypso's expert was incorrect, T-Mobile's proper remedy is a motion to exclude or a *Daubert* motion, not sanctions. (*Id.* at 17-18, 19.) Calypso argues that none of the instructions to its damages expert were improper. (*Id.* at 18.)

T-Mobile argues that Calypso was deficient in responding to T-Mobile's interrogatories and that Calypso improperly withheld documents for months that it failed to produce. (Mot. at 11-12.) T-Mobile argues that when Calypso made it aware of these documents it attempted to send a vendor to copy the documents and was delayed by Calypso, and that Calypso had knowledge of the documents weeks before it informed T-Mobile of their existence. (Reply at 7.) T-Mobile argues that the extensions taken by Calypso in responding to T-Mobile's interrogatories were unilateral. (Reply. at 8.)

Calypso argues that T-Mobile mischaracterizes events, and that T-Mobile granted Calypso extensions on its interrogatory responses. (Resp. at 16.) Calypso argues that, as soon as its newly retained counsel became aware of the disputed cache of documents held by a third-

party, it "made every attempt to allow T-Mobile an on-sight inspection or to grant access to the documents with the understanding that Plaintiffs' counsel had not yet had an opportunity to review all of the documents for privilege . . . ." (*Id.*) Calypso states that T-Mobile then refused to inspect or use a copying service unless it was paid for by Calypso. (*Id.*) Calypso states that its answers to T-Mobile's interrogatories were properly limited based on assertions of privilege. (Sur-Reply at 2.)

The Court is sensitive to the allegations of litigation misconduct and to allegations that the Court's orders were not followed, and the Court spent many days working through both the jumble of the Parties' conflicting versions of numerous events in the case and the motion practice that occurred in relation to a subset of those events. Considering the totality of the circumstances, however, the Court finds T-Mobile has not demonstrated by a preponderance of evidence that this case stands out from others with respect to the substantive strength of Plaintiffs' litigating position or by the manner in which the case was litigated, so as to be exceptional. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014).

**B.    Was Calypso's theory of infringement based on a construction of "pre-established vicinity range" objectively baseless?**

T-Mobile's primary theory under 35 U.S.C. § 285 is that Calypso knew or should have known that it was pursuing an objectively baseless claim construction theory and, by relation, an objectively baseless theory of infringement.

T-Mobile argues that Calypso's construction of the term "pre-established vicinity range" represented subjective bad faith because the construction lacked support in the intrinsic record and its lack of objective foundation either was known or was so obvious it should have been known. (*See* Mot. at 4-6.) The "pre-established vicinity range" term is a "predetermined parameter" that is required by every claim of the patent-in-suit (the '923 patent), which is

between a "wireless communication device" and another device. Calypso proposed that the term "pre-established vicinity range" be construed as "a zone within which at least two transceivers in a transceiver assembly are able at a preset power level to recognize each other." (Dkt. No. 281 at 32.) In support of its construction, Calypso cited to statements from the patent and testimony of its expert—Ahmed Tewfix.

T-Mobile argues that the patent claims clearly required a physical distance—the vicinity range—between the devices, that Calypso's theory deliberately read this requirement out of the patents and attempted to substitute concepts, such as "signal to noise ratio" and "signal strength," in place of physical distance, and that Calypso knew or should have known that this was an objectively baseless reading of the '923 patent. T-Mobile specifically argues that Calypso should have realized there was no infringement at the outset (in pre-suit investigation) or realized after the Court issued its *Markman* order.

While Calypso's theory of construction ultimately proved incorrect, considering the totality of the circumstances, the Court finds that Calypso's claim construction position is simply not one that would make this case stand out from others with respect to the substantive strength of Plaintiffs' litigating position or by the manner in which the case was litigated so as to be exceptional. *Octane Fitness*, 134 S. Ct. at 1756. Specifically, Calypso argued, drawing on the testimony of its expert for support, that a person of ordinary skill in the art would have interpreted the "pre-established vicinity range" limitation as an area and not an explicit physical distance. The Court ultimately concluded that T-Mobile had the better argument in its *Markman* ruling, but the Court only did so after fifteen pages of analysis.[5] (*See Markman* order at 32-47.)

---

[5] In its Reply, Plaintiff argues that the Court's *Markman* order signaled that the Court's construction of the "pre-established vicinity range" term was at odds with the '923 patent's specification. Plaintiff is incorrect. The Court's construction was compelled by the weight of

It is worth noting that, in its analysis of the term, the Court's decision was based on the weight of the evidence—the Court did not find a clear and unmistakable disavowal or definition of the term in either the patent or the prosecution history.

T-Mobile argues that Calypso's expert improperly opined—in his initial and supplemental report and in at least one deposition—on theories that conflicted with the Court's claim construction. Calypso correctly points out that the expert's initial and supplemental reports were served and the deposition occurred before the Court issued its *Markman* order.

T-Mobile also argues that Calypso pursued an improper theory of infringement, but T-Mobile's argument collapses back into its argument that Calypso's claim construction theory was improper. Given the timing of events, T-Mobile argues that, in effect, Calypso was improper in opposing T-Mobile's Motion for Summary Judgment of Non-Infringement of All Claims of U.S. Patent No. 6,680,923. While the Court noted that "[a] number of arguments that Calypso raises in its opposition [to summary judgment] are similar to arguments considered and rejected by the Court during the claim construction process," notably not all of Calypso's arguments were similar. (Dkt. No. 309 at 6.)

It is the Court's experience that parties in patent litigation suits almost always have conflicting (often substantially conflicting) interpretations of patent claims—and theories of infringement, non-infringement, and validity based upon their interpretation of the patent claims. Accordingly, the Court does not consider a case "exceptional" simply because there is dispute over the construction of patent claims and that a defendant or plaintiff's construction proved to be incorrect—there must be more.

---

the evidence, including the specification. Plaintiff's citation in the Court's *Markman* order only reflects that the weight of the evidence for the Court's construction was so persuasive that it would overcome the principle that claim construction should preserve a patent's validity.

Considering the totality of the circumstances, the Court finds that T-Mobile has not demonstrated by a preponderance of evidence that—in consideration of Calypso's claim construction arguments or theories of infringement based on those constructions—the case stands out from others with respect to the substantive strength of Plaintiffs' litigating position or by the manner in which the case was litigated so as to be deemed exceptional.

## CONCLUSION

For the reasons discussed above the Court **DENIES** Defendant T-Mobile USA, Inc.'s Motion for Sanctions Pursuant to 35 U.S.C. § 285 Against Plaintiffs Calypso Wireless, Inc., Drago Daic, and Jimmy Williamson, P.C. (Dkt. No. 326).

**SIGNED this 5th day of March, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE